Good morning, Your Honors. My name is Brian Murray. I represent the Appellant Motorola. And good morning, Your Honors. Mike Reagan, and I represent the Appellate plaintiffs. Well, you, I think, both argued before us before. You generally know we're kind of open. There's the basic times, but if we ask questions, we give you substantial leeway. So with that, you may start when you're ready. May it please the Court. Fundamentally, this is a Texas case that the Circuit Court should have dismissed based on the doctrine of forum nonconvenience for two reasons. First, the Well, what about count three, which looks for wanton and willful? Do you think that that's focused in Texas, or is that focused at the site where those decisions are made that impact on the issue of willfulness? Well, certainly, Your Honor, I agree that wantonness and willfulness, the complaint under Illinois standards has maybe some problems with fact pleading. But to the extent that I understand what the claims are, fundamentally, it's about workplace exposure. And the level of knowledge at corporate headquarters in Motorola certainly is one element of that, of the wantonness and willfulness. But before you even get to that, you have to prove that there was a workplace and that there was an exposure. You have to prove that there were chemicals. You have to prove that Motorola knew of the condition and that the employee didn't. What about all the affidavits, which I notice you did not provide any? We submitted two affidavits, Your Honor. We submitted the affidavit of Mr. Pepe, and we submitted the affidavit of Asanga Wirakun. And these people testified to the categories of people who would be needed to try to defend this case for us. We didn't submit individual witness names generally, and that's true, Your Honor, but Piper and other cases suggest that's not the point. If the point of form nonconvenience is to stop a defendant from having to defend himself in a place where it's nonconvenient, in a place where a more appropriate form is someplace else. Well, that's an interesting issue because, you know, I'm not convinced, notwithstanding the dictum or statements of some of the opinions, that it's simply a matter of running a race and you can win by notes. The evidence in favor of transfer has to be strong or substantial. That negates the notion that simply the more convenient form wins. It seems to me it has to be meaningfully more convenient rather than simply in terms of measuring the various interests and contacts. There may be more in one place than in another, and that is consistent with the deference given to plaintiff's choice of form. Absolutely, Your Honor. Two parts to that response. First, yes, plaintiff's form choice is due some deference, although less so in this case where the plaintiffs don't live here and this is not the site of the injury. But as important, we want to embrace, certainly it's an abuse of discretion standard required to overturn the circuit court's order, but before you even get to the exercise of discretion, you have to talk about the legal framework in which she was exercising that discretion. Did she apply the right legal standards? And it's our position, and this court has said so not once but twice in the last three years, that to focus mainly on the bricks and mortar location of a corporate headquarters, like the circuit court did here, is not the appropriate legal standard. Well, I frankly don't think that there's mileage to be gained from the Burbig opinion and the dominance that the circuit judge might have given to the situs of the defendant corporation. I think the concern ought to be with the ramifications of that in terms of serving the interests of the trial and where the location of the defendant facilitates other aspects or facets that are necessary to conduct the trial. The mere fact that it centers around the location of the defendant corporation is not a negative. Right, Your Honor. And I guess the point here – I think the argument attempts to make the situs of the corporation either to be totally neutered or a negative factor. It's not. By itself, it has some bearing under the very language of the court. And to the extent that by being the place of incorporation, it concentrates the area in which certain decisions are made, where the control group of the corporation and their activities start playing a role in creating the liability or improving the liability or the damages in the case, we're free to consider it, are we not? Absolutely, Your Honor. And so let's focus on that. Beyond bricks and mortar, what did the circuit court look at that was necessary? Well, plaintiffs came forward with two kinds of evidence that they said justified keeping this thing in Illinois. Two kinds. One is a group of about 30 people who served on various committees. Even the circuit court said that there was no evidence that we would have to figure out in discovery whether any of these people actually knew anything relevant to the case. But if you don't present any, what is the judge to look at? Well, Your Honor, plaintiffs had 60 interrogatories. They had six months of discovery. They had two depositions of witnesses. And you had an opportunity to file an amended complaint. You didn't do it in the amended complaint. You didn't give it any affidavits. You didn't do anything. Right. Although we had two affidavits that pointed out where the groups of people are who would be relevant to this, to our defense. Again, our defense is were these people exposed? What chemicals? What dosage? I mean, fundamentally, this is a workplace exposure case. That would come from people... Is it really only that? Or is it something more about where the actual cause initiated from? Well, fundamentally, Your Honor, I would point to the circuit case... Meaning Motorola. Right. And I would point to the Searle case. This is not new ground. This was 30 years ago that there was an injury. Searle was about drugs in the United Kingdom where the drugs had gone over there and people claimed that they were injured due to a corporate headquarters failure to warn. And the plaintiff said the corporate headquarters of Searle is in Cook County. And so the case should go forward in Cook County because that's where the evil knowledge is. That's where the corporate people who make these decisions and establish these policies are. And the Searle court said, absolutely not. If you could make every case a case about wanton and willfulness just by saying there's evil knowledge at corporate headquarters, then, my gosh, Motorola's far-flung operations across the world, anytime anything happened anywhere, that trial would come here to Cook County. That's not what the doctrine of foreign non-convenience is about. It's a step beyond just a venue analysis. No one's disputing that venue is proper here. It's a question about the most appropriate form. And when you've got decisions about chemicals being made, as Mr. Pepe testified in his affidavit in Texas, when you've got the co-workers, the family members, the doctors, every treating physician that we would want to talk to is not in Illinois. But those aren't going to be the primary doctors. How do we know that? I mean, plaintiffs have certainly said that, but how do we know that? We need to first establish that there was... So we're supposed to just follow whatever you say, your arguments, and ignore the others? No. We'd ask you to look at the balancing test. Again, this is not... Well, that would be the balancing test. Right. And the prejudice to Motorola, I think, is where we have to focus most importantly. Certainly plaintiffs say that there are Illinois witnesses. The circuit court said she wasn't sure if any of them knew anything, and that's what the discovery left us with. But certainly they say there are Illinois witnesses. To the extent they... Well, to the extent that they urge the significance of Illinois witnesses, and to the extent that discovery is made available to you and you don't use it, are we precluded then from accepting the assertions of the plaintiff in that regard? It's one thing if you present us, if you depose these witnesses, and you find they have nothing to offer. Otherwise, aren't you vulnerable, at least to the fact that we now have to deal with the witnesses as they are presented by the side who purports to know, without any opposition being interposed to it? And as a softball to you, I don't think the fact that you don't provide a list of all the witnesses in Texas and in Arizona that we're to assume you have none. I think we can use common sense to the extent that there are certain issues that are going to be localized to Texas and Arizona. But by the same token, we also have to cope, and I'm injecting another facet now that you may want to address, the fact that it's not all localized to the same state. Even excluding Illinois, you still have Arizona. So now the fact that you're closer to each other, I don't think is going to make a difference. At least none of you really kind of argued that. I confess I don't know the geography to the extent that to place their proximity to each other, other than the fact that even being a border state to Texas doesn't mean it's convenient if it's on the other side of Texas. But in any event, you don't have a clear sailing on the local issues, even if we were to ignore the transcendent questions that the plaintiffs urge to have significance in this case. First of all, I want to absolutely agree with Your Honor's point that this court can look at the categories of witnesses that are in Texas, and we tried to lay those out as best we could in the briefs. But the second point I want to point out is the prejudice of having this go forward in Illinois. And this is something you won't find in plaintiff's briefs, and I would actually encourage the court to ask them when they get up. Right now, what they're advocating is a one-way ratchet. If they want these Motorola witnesses, the circuit court said they deposed two of these people who knew nothing about this case, nothing relevant at all. The circuit court said even if these people do know something, you know, that they're here in Illinois, our point is if they know something and they're Motorola employees, we're going to have to bring them to Texas. They're our employees. On the other hand, if this case, if we're forced to trial here, all of these family members, these treaters, these friends, the co-workers, everybody with knowledge about a workplace exposure case is going to be beyond our subpoena power. We can't make them drag these people out here. Well, we don't know, and this is where I coincide, I agree with Justice Smith in the sense that you don't specify who those witnesses are. We don't know how many of those you will need. It may very well be that the good lawyer that you are, and I'm sure that, I don't know that you're going to try the case, whoever tries a case of this magnitude is going to know how to take discovery and is not going to deliver 20 witnesses where three could do it. And if three could do it, then of course you do have the availability of taking evidence depositions on videotape. I know the cases don't concede that that's the equivalent of live bodies, but it certainly doesn't put your proof out of reach to you. Certainly, Your Honor, although the cases do, as you point out, suggest that evidence depositions can't make up for trying the case in the most appropriate form. Again, we just ask you to think about how this case gets tried. The elements, these are people where you talk to the doctors, you talk to the witnesses. You're going to need to talk to the treating physicians to figure out if these were pre-existing conditions, if these were genetic. There are all sorts of things before you get to expert witnesses, which frankly don't matter much, that you're going to need to know before you get to the level of what's going on in the corporate suite. And again, in Illinois, they've got two kinds of witnesses. They've identified 30 witnesses who sit on committees. A, two they deposed, didn't know anything. B, there are duplicated witnesses of those people sitting in Texas who actually worked at the division, which was headquartered in Texas until it was spun off seven years ago that would be duplicative. No judge is going to let them put on all 30 of the Illinoisans plus a bunch of Texans. And in any event, the last piece is the three CEOs, which they later told us one of them doesn't live in Illinois anymore. That's the kind of witness they're pointing to Illinois for. You don't need to come to Illinois for that. That's the duplicative part. That's what we don't need. The gravamen of this workplace exposure case about people being exposed to chemicals while making semiconductors in Texas is in Texas. And I want to add one point. I know the courts don't generally view location of documents as being that big a deal in this age of digitization, but I want to focus on Mr. Pepe and Mr. Wiracoon testified by affidavit that the documents relevant to these issues, the exposure documents, material safety data sheets, air quality testing, all of those were with the division and with the plants in Texas. We sold that division off seven years ago. So they're now with a new owner, not even Motorola. They're with Freescale in Texas. But you've got a separation agreement. We have a separation agreement, although the law is clear that you can't rely on that to be sure that we're going to be able to get any witnesses out of anywhere. All those documents reside with the new owners. We haven't had those plants in seven years. Forcing us to trial in Illinois where our witnesses to defend ourselves are outside the subpoena power is not in the fundamental fairness mode of what Foreign Non-Convenience is about, especially where it's a one-way ratchet and the prejudice to plaintiffs of going forward in Texas is zero. If I may, I'd like to reserve my time. Thank you. Thank you. May it please the Court. I would be a poor lawyer to not at least touch base with the touchstones here about the legal standards. And then the legal standard for both the circuit court and this court in reviewing the action of the circuit court is whether the balance of the factors strongly favors transfer, regardless of whether the plaintiff is a non-resident or not. Even in the case of a non-resident, it is an unequal balance of the test. And the plaintiff has the right to choose the forum. And the balance must strongly favor. Secondly, that interplays, although I haven't seen it described that way, with the construct of giving preference to the plaintiff in his choice of forum. Exactly. And that is a national concept that goes back to Piper Aircraft. It finds expression in Section 83 of the applicable restatement of courts. And it ties to the plaintiff's. Plaintiff has the borders through the case. And one of the advantages given back to the plaintiff is the right to choose the forum. The second thing I want to just touch base on here is the standard review, which is that there is considerable discretion given to the trial court. And the trial court can't be reversed unless this court can conclude that no reasonable person would have decided this case as the trial court. But Mr. Reagan, you do know that in this case, perhaps in a very special manner, the Supreme Court, our Supreme Court, is looking over our shoulder. So we really have to know what they want us to do, which is a difficult task at times. And if you've grown dowdy and land you're lost in the various channels taken. Exactly. If I could spend some of my precious time in First National Bank versus Green, you'll find a sentence which says that an abuse of discretion is not a pejorative term, which came from my brief and which Justice Fitzgerald adopted. And so that kind of leads me to the next point here, and that is that I do have to say something about the way the defendants have to have argued this case. And what they've done is they've essentially, they've done two things. They've ignored the real essence of the type of case that we have played here. They're trying to say this is just a workplace exposure case, as if it were a one-time chemical spill or a machine accident or something like this. And the second thing they've done, and they do it even in their recent filing of this court's opinion for supplemental authority, they've belittled really the trial judge's reasoning at every turn. And they've suggested that because she's been reversed in the appellate court on other occasions that that gives reason to suspicion that she has to be reversed here. And I think that's unfair to the merits of these important cases and also to the trial judge. Well, I don't think that that issue is a weapon for the plaintiffs, nor is it a retaliatory weapon for the defense that they've used it. It's kind of a non-sequitur. Sometimes it almost looks like you've given up when they do that. Pardon me? I was being cute. I was saying sometimes when they do that, it almost appears they've given up. Yes. Justice Gordon touched early in the questioning on the allegations to corporate conduct here. They're very specific. They're not expressed in the defendant's brief anywhere. But the defendant determined at its Schomburg headquarters to use known reproductively dangerous chemicals in its various clean rooms. And this conduct had been going on for decades. And it's outlined in the brief. The increasingly alarming warnings which came out from even organizations which the executives of Motorola belonged to beginning in the late 1970s, ratcheting up in the early 1980s. And these warnings were given to Motorola management and leaders in Schomburg. So that was where some knowledge resided, some very important knowledge. Secondly, the health and safety and industrial hygiene sampling that was done at the plant level was sent to Schomburg and monitored there. That's where the decision making took place on every aspect of this in terms of what chemicals to use, how were the plants doing, what was the health of the workers. And on the health of the workers, there's a unique fact about this case is that Motorola is self-insured and all of the health records reside at Schomburg. And were therefore available for monitoring and were in fact monitoring there. The commitment. A softball to you, but I'd like some attention given to it in the rebuttal. So is the question here of liability and the degree of liability the dominant issue in this case or are damages the dominant issue or is it evenly divided? I'm going to go out on thin ice a bit here because we've focused on forum. But my belief is that the two dominant issues will be liability and proximate causation. And the proximate cause, of course, is folded in in one sense to liability. But liability will be the key here, which puts a lie, I don't mean that in a pejorative sense, it diminishes the importance of the treating physicians here. I mean, clearly there has to be some baseline evidence gathered on what the medical status, medical condition of the children is. But then really the evidence in this case, the complicated evidence is going to come on a higher level of chemistry, biology, dysmorphology, and that type of thing. You know, the point is there's been references, Justice Gordon, I always see a question, feel free to interrupt me, but we offer specific affidavits and they've been discussed already. And we have specific witness disclosure. We've disclosed 50 people who sat on these committees. Now they're dismissed by the defendants as simply committees, but that's the decision making. That's where the corporate decision making resided was in these committees. So it's not as if we simply have a committee and it's really unimportant and what really happens was on the plant floor. This case is about the decisions that were made here and made by the members of those committees. Except, of course, the fact that you control these witnesses to the end and while there may be some expense involved in it, there's no risk of losing their testimony or their live bodies if necessary, as opposed to the fact that the defense may have problems controlling these witnesses other than through taking videotaped depositions without being able to present them to the jury. So there's a little bit of an imbalance there, isn't it, and that's one reason why I would want to know if the record is such that it would give us a flavor of what issues here predominate the trial. The liability issues will predominate without any question, but part of liability, frankly, is the question of proximate causation as well, but liability is going to be the big thing here. And if a premise of the Court's most recent question were about our ability to control some of these Motorola people, a number of them no longer work for Motorola. And so for Motorola to say, well, come to Texas because we can bring any Motorola people you want to Texas, makes no acknowledgment of the fact, and I can give you names should you wish, and the names are in the record of people who, and it's documented in the record, that they no longer work for Motorola. And I can assure you that... Some still reside in Illinois. And some still reside in Illinois. Some reside in Florida and Virginia and elsewhere. And there's been a flavor in the questioning already in this case about the fact that there is no predominance of a locus of witnesses. No matter where you go, people are going to be reduced to getting witnesses elsewhere. And, you know, I mean, that's a fact of life in these United States. And this business about depositions not being a substitute can be traced back to the Piper aircraft in 1947, but that was essentially before television. It was essentially before jurors were used to looking at screens, and it was essentially before, you know, five-foot-wide screens, et cetera. Now, the plaintiff's disclosures have been touched upon, and they're really nonexistent. They make reference to two affidavits, Pepe and Wiracoon, and I'm mispronouncing both names. But Pepe's affidavit was withdrawn. It was later sort of insinuated back into the record, but you're going to find in the record that it was withdrawn. And, secondly, the two affidavits are essentially identical. Third, they really don't give you any names. And, fourth, as we quoted in full length in our brief, the disclosure of the plaintiffs here was purely in terms of generalities. They speak about coworkers. They speak about, you know, people who made observations down there, et cetera. But it's purely generalities. We've talked about the fact that no state predominates. We've talked about the fact that the witnesses in Texas really pale in comparison to where the real battle in this case is going to be, which was the quality of the decision-making in Motorola as opposed to what the obstetrician thought or what a coworker thought. And as part of that, of course, the chemical involved here is invisible. And so if there was some thought that, well, you know, a coworker in Texas might be important in terms of what the coworkers saw or something like that, there was really not much to be seen. We're talking about the design of the facility. We're talking about the decision to use the chemicals, the ventilation systems, the design of the building was in here. So, really, this is the heart of the case and not whether something was spilled in Texas on one occasion. But there are certain localized decisions that are even affecting liability in Texas, such as the posting of warnings. No doubt about the fact that there are some in Texas. But then we come back to where the court started this morning, and that is that balance has to strongly favor and, secondly, that there is no predominance here. There are a few legal contentions made in the reply brief which are simply wrong. And I can't get to all of them, but I wanted to touch upon two. First, the defendant argues at two points in the reply brief that there is a different rule of law for interstate transfers. And they said, they propose a rule that convenience is no longer an issue when the only question is the more appropriate forum. And there is no support for that, either as being the rule of law or there being a separate rule of law for interstate versus intrastate transfers. Langenhorst, obviously a key Supreme Court case, never gets cited by the defendant at all. And Langenhorst expressly says that the more appropriate forum test is not to be used as the test. And, you know, so there is that, you know, language in some of the cases. Secondly, I noted that in their trying to say that there's a different rule of law for interstate as opposed to intrastate transfers, they accuse us of conflating two lines of reasoning. And then they cite three cases, and two of the three cases they cite are intrastate cases. And secondly, the other rule of law I want to talk about, they suggest that in balancing the public factors here, the public interest factors, that in saying that an Illinois court or the state of Illinois has interest in examining the conduct of a corporate resident, even though the injury may have occurred elsewhere, they say that this is a rule, quote, applied exclusively in products liability cases. And that is not true, either. It turns out that most of those cases are products liability cases, but there is not a word in any of those cases that says that this is unique to products cases. Secondly, this case bears some relationship to those same cases, which happen to be product cases, because we're talking about corporate decision making, which acts at a distance. That is, the decisions here to use or not use a particular chemical, the decision made here to warn or not warn, decisions made here about concentration, low or high, and it acts at a distance. In those cases, and there are many of them, we cite page 43 of our brief, which talk about Illinois having a public interest in examining the conduct of its corporate citizens in terms of... The interest is obviously intensified where it impacts on Illinois residents and ultimately reaches into the pockets of the welfare provisions of the state. Right. Where it affects the pocketbooks, so to speak, of the state. Court has a full morning. I'll close. We respectfully suggest that the trial court correctly analyze the matter and therefore the standard review of abuse of discretion applies. We also suggest she arrived at the correct result. She did not focus solely or even unduly on the location of corporate headquarters, which is the predominant theme in their brief, and it is simply not true. She doesn't deserve the criticism which has been placed on her, and it cannot be said that no reasonable person would have decided the balance of the factors in this case in a contrary manner. Thank you, Your Honor. Thank you. Briefly, Your Honor, if I may, I'd just like to make two points. First, I want to respond to Justice Gordon's point. We just heard counsel say that liability and proximate causation are, in fact, the center of what they're going to do. And if you look at the elements of proximate causation, they talk about whether the employee was exposed to chemicals, the dosage, whether there were preexisting birth defects, whether it resulted from an exposure at Motorola, and whether the parent or child had anything else before they got there. Not a single one of those comes from Illinois witnesses. Every single one of those comes from documents, from people, from witnesses, coworkers, managers, friends and family who know these people who are all in Texas. Again, one-way ratchet. We can't force Texans to come to Illinois. Are you not isolating the individual versus maybe more what the case is aimed at, as corporate liability, and therefore is, in fact, what you just said totally accurate? Absolutely, Your Honor. I mean, I don't have to prove, if I prove that the corporate entity foisted this upon these people, I don't have to prove that each one of them was sick and injured by a local physician. I'm going to have some expert that says this chemical caused that. Fundamentally, you need to prove proximate causation for each of these plaintiffs, and that leads to a second point. And, again, this isn't before the Court today. Aren't most of these proximate cause factors that you've outlined paper issues, in the sense that they exist on paper rather than, so to speak, occurrence witnesses or the like? Some of them may exist on paper in free-scales possession for the last seven years, but they're also fundamentally- They're statements of policy, statements of procedure. These things don't, one would think, in a large corporation or maybe even in a small one, simply proceed on an ad hoc basis. They're planned, formulated, and in the computer, or in this case, maybe, on paper. But just as bricks and mortar don't come to trial and testify, neither do documents. It's the people. It's the director of environmental health and safety. It's the person who did the training at that plant. It's those people who will bring alive for the jury our defense, and it's those people without whom we will be unable to mount our defense here in the state of Illinois, which is why Texas is more predominant. And, again, this is just the beginning. If you were to authorize two plaintiffs who don't live here, who never worked in Illinois, who were never treated in Illinois, who other than alleging corporate knowledge in the executive suite have no demonstrable connection to Illinois, if their two cases go through here, there are over 90 of them waiting in circuit court, these same lawyers, to go forward. Really, Your Honors, there's not an Illinois connection here. The fundamental locus of this case exists in Texas, where the people worked, where the people lived, where the people were injured. There are no other questions. We'd ask that the circuit court's order be reversed. Thank you, Your Honors. Thank you. We'll take it under advisement and get back to you as soon as possible.